UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Flomo Tealeh,                                          Case No. 21-cv-1318 (JNE/DJF)

Plaintiff,

**ORDER**

v.

Postmaster General Louis DeJoy,

Defendant.

---

This matter is before the Court on Defendant Postmaster General Louis DeJoy's Motion for Summary Judgment. (Dkt. 87.) For the reasons addressed below, the Court grants the motion.

## BACKGROUND

Plaintiff Flomo Tealeh, a former mail handler at the United States Postal Service ("USPS"), filed this action alleging discrimination based on race and national origin, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964. Tealeh, who is Black and Liberian-American, was employed by USPS from February 2017 to February 2022. During his employment, Tealeh alleges he was subjected to various instances of disparate treatment, retaliation, and a hostile work environment based on his race and national origin. The alleged discriminatory and retaliatory acts include the revocation of his Powered Industrial Truck ("PIT") license, denial of overtime opportunities, false accusations of unauthorized overtime, unjustified suspensions, and failure to promote.

Tealeh filed two Equal Employment Opportunity ("EEO") complaints related to these allegations, one in July 2019 and another in November 2020. After exhausting his administrative remedies, Tealeh initiated this lawsuit on June 1, 2021, and filed an amended complaint on August 5, 2021.

Defendant now moves for summary judgment on all of Tealeh's claims. Defendant argues that most of Tealeh's claims are time-barred under the applicable 45-day statute of limitations for federal employees and that Tealeh has failed to establish a prima facie case or demonstrate pretext for his timely claims. Tealeh opposes the motion, contending that he has presented sufficient evidence to create genuine issues of material fact on his claims.

The Court, having considered the parties' submissions and the record evidence, will now address the merits of Defendant's motion for summary judgment.

## ANALYSIS

### I.    Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must then set forth specific facts showing

that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. In evaluating a motion for summary judgment, the Court must view the evidence and any inferences drawn from the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

In employment discrimination cases, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.* at 802. If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the plaintiff must then demonstrate that the defendant's proffered reason is a pretext for discrimination or retaliation. *Id.* at 804.

## II.    Timeliness of Claims

The parties dispute whether Tealeh's disparate treatment and retaliation claims are timely under the applicable statute of limitations for federal employees.

Before a federal employee can sue their employer for violating Title VII, they must "initiate contact" with an EEO counselor at their agency "within 45 days of the date of the

matter alleged to be discriminatory." *Green v. Brennan*, 578 U.S. 547, 549-50 (2016) (citing 29 C.F.R. § 1614.105(a)(1)).

Tealeh first contacted the EEO office on November 9, 2020. Consequently, only alleged discriminatory acts occurring within the preceding 45 days—from September 25, 2020, to December 20, 2020—would be timely under the applicable statute of limitations.

Tealeh argues that the standard filing period for Title VII employment discrimination claims is 180 days and 300 days, citing *Green*. However, the Supreme Court in *Green* explicitly recognized the different limitations period for federal employees, noting that a federal civil servant must initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory" before filing a Title VII suit. 578 U.S. at 549-50.

Tealeh also contends that his claims relating to the suspension of his PIT license are timely because he had a follow-up meeting regarding licensure during the relevant time period. However, Tealeh testified that the alleged decision to suspend his PIT license was made nearly two years earlier, in February 2019. A follow-up meeting with management does not revive an otherwise untimely claim, as the 45-day limitations period runs from the date of the alleged discriminatory act, not from the date of any subsequent discussions about that act. *Id.*

A review of the record reveals that most of the alleged discriminatory acts underlying Tealeh's disparate treatment and retaliation claims occurred well before September 25, 2020. For example, the suspension of Tealeh's PIT license allegedly occurred in February 2019, the denial of overtime opportunities allegedly occurred from

late 2019 through January 2, 2020, and the failure to promote Tealeh to the Data Collection position allegedly occurred on January 30, 2020.  These claims are time-barred under the 45-day limitations period.  *See id.*

Based on the applicable law and the evidence in the record, the Court concludes that the 45-day limitations period for federal employees is controlling, and Tealeh has not shown that his claims are timely under this standard.  *See id.*  Accordingly, any claims based on alleged discriminatory acts occurring before September 25, 2020, are time-barred and must be dismissed.

## III.   Disparate Treatment Claims

### A.   Overtime Claims

Tealeh alleges that he was denied overtime opportunities based on his race and national origin, while Defendant maintains that overtime was assigned according to the provisions of the Collective Bargaining Agreement ("CBA") and that Tealeh has failed to establish a prima facie case of discrimination or demonstrate pretext.

To establish a prima facie case of racial discrimination in hiring under Title VII, a plaintiff must show that: (1) they belong to a racial minority; (2) they applied and were qualified for a job for which the employer was seeking applicants; (3) despite their qualifications, they were rejected; and (4) after their rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action.  *Id.* The plaintiff must then demonstrate that the defendant's proffered reason is a pretext for

discrimination. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc) (stating that a plaintiff may show pretext by demonstrating that the defendant's proffered reason is unworthy of credence because it has no basis in fact, is not the true reason for the adverse action, or is insufficient to explain the adverse action).

As a threshold matter, the Court must determine whether Tealeh's overtime claims are timely. Tealeh alleges that he was denied overtime opportunities from late 2019 through November 2020. However, as discussed in the previous section, claims based on alleged discriminatory acts occurring before September 25, 2020, are time-barred under the applicable 45-day limitations period for federal employees. *See* 29 C.F.R. § 1614.105(a)(1); *Green*, 578 U.S. at 549-50. Therefore, the Court will only consider Tealeh's overtime claims to the extent they are based on events occurring between September 25, 2020, and November 2020.

Turning to the merits of the timely portion of Tealeh's overtime claims, the Court finds that Tealeh has not established a prima facie case of discrimination. While Tealeh, as a Black Liberian-American, is a member of a protected class, and he claims he was available and willing to work overtime, he has not shown that the circumstances surrounding the allocation of overtime give rise to an inference of discrimination.

Tealeh identifies Jean-Marie Longi and Craig Wendt as comparators who allegedly received more overtime than he did. However, Tealeh has not provided evidence demonstrating that he was similarly situated to Longi and Wendt in all relevant respects. *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (stating that comparators must be "similarly situated in all relevant respects"). Defendant has presented

evidence that several factors, such as employees' scheduled days off, tour preferences, and work section, could impact overtime allocation.  Tealeh has not shown that he and his proposed comparators were similarly situated with respect to these factors.

Moreover, the fact that Longi, one of Tealeh's proposed comparators, is himself a Black African immigrant undermines Tealeh's claim that overtime was allocated based on race or national origin.  This weakens any inference of discrimination that might otherwise be drawn from the alleged disparity in overtime hours.  *See Askari v. L.A. Fitness Int'l, LLC*, 2010 WL 3938320, at *5 (D. Minn. Oct. 5, 2010) ("[A] plaintiff faces a difficult burden of establishing discrimination when the decision-maker is a member of the same protected class as the plaintiff.").

Even if Tealeh could establish a prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for the allocation of overtime: adherence to the provisions of the CBA.  Tealeh has not presented evidence demonstrating that this proffered reason is pretextual.  He has not shown that Defendant's reliance on the CBA has no basis in fact, that it was not the true reason for the overtime allocation, or that it was insufficient to explain the alleged disparity in overtime hours.  *See Torgerson*, 643 F.3d at 1047.

Based on the record evidence and the applicable legal standards, the Court concludes that Tealeh has not established a prima facie case of discrimination with respect to his overtime claims.  Tealeh has not shown that the circumstances surrounding the allocation of overtime give rise to an inference of discrimination, nor has he demonstrated that he was similarly situated to his proposed comparators in all relevant respects.

Moreover, even if Tealeh could establish a prima facie case, he has not presented evidence showing that Defendant's proffered reason for the allocation of overtime—adherence to the CBA—is pretextual. Accordingly, summary judgment in favor of Defendant is warranted on Tealeh's overtime claims.

## B.   Emergency Placement and Suspension Claims

Tealeh alleges that his emergency placement on October 28, 2020, and subsequent suspension were the result of disparate treatment based on his race and national origin. Defendant argues that these actions were taken due to Tealeh's threatening behavior toward his supervisor, Mohamed Ali, and that Tealeh has not established a prima facie case of discrimination or shown that Defendant's proffered reason is pretextual.

To establish a prima facie case of disparate treatment, a plaintiff must show that: (1) they are a member of a protected class; (2) they met their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* The plaintiff must then demonstrate that the defendant's proffered reason is a pretext for discrimination. *Torgerson*, 643 F.3d at 1047.

As a threshold matter, the Court must determine whether Tealeh's emergency placement and suspension constitute adverse employment actions. The Eighth Circuit has held that a suspension with pay is not an adverse action. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891-92 (8th Cir. 2005). Tealeh was issued a "no-time-off" suspension,

which, according to Defendant, means that he was paid during the suspension period. However, Tealeh claims that he lost wages as a result of the emergency placement. Given this factual dispute, the Court will assume, for purposes of this motion, that Tealeh has suffered adverse employment actions.

Turning to the remaining elements of the prima facie case, it is undisputed that Tealeh, as a Black Liberian-American, is a member of a protected class. However, Tealeh has not presented evidence showing that the circumstances surrounding his emergency placement and suspension give rise to an inference of discrimination.

Defendant has consistently maintained that Tealeh was placed on emergency placement and subsequently suspended due to his threatening behavior toward his supervisor, Mohamed Ali. According to Mohamed Ali, Tealeh stated, "If you talk to me again, there's going to be a disaster in this building." Defendant contends that this threat was reported to Senior Manager of Distribution Operations Dave Emerson, who then instructed supervisors to place Tealeh on emergency placement.

Tealeh attempts to cast doubt on Defendant's proffered reason by highlighting inconsistencies in Mohamed Ali's account of the incident. However, the Court finds that these inconsistencies are relatively minor and do not give rise to an inference of discrimination. Whether the threat was made over the phone or in person, and whether Tealeh was working a regular or overtime shift that day, does not change the fundamental nature of Defendant's proffered reason—that Tealeh was disciplined for threatening his supervisor.

Notably, in attempting to demonstrate pretext, Tealeh does not offer affirmative evidence showing that Defendant's proffered reason for the adverse actions was false or that discrimination was the true motivation. Instead, Tealeh relies on highlighting perceived inconsistencies in Mohamed Ali's account of the threatening incident. However, when "an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext . . . ." *Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). To prove pretext, a plaintiff must both discredit the employer's asserted reason and show that the circumstances permit drawing the reasonable inference that the real reason was discriminatory. *See Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005). Minor discrepancies in a witness's account are not sufficient to establish pretext, absent affirmative evidence that the employer's reason was false and that discrimination was the real reason. *See Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 643 (8th Cir. 2008) (holding that minor inconsistencies in an employer's explanation did not raise an inference of pretext).

Moreover, Tealeh has not presented evidence of similarly situated employees outside his protected class who were treated more favorably under comparable circumstances. The Eighth Circuit has held that "[a]t the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc). Tealeh has not identified any non-Black or non-Liberian employees who engaged in similarly threatening behavior but were not disciplined.

The Court also notes that two of the key decision-makers involved in Tealeh's emergency placement and suspension—Mohamed Ali and Ali Said—are themselves Black African immigrants.  While not dispositive, this fact further undermines any inference of discrimination based on race or national origin.  *See Askari*, 2010 WL 3938320, at *5.

Even if Tealeh could establish a prima facie case, he has not demonstrated that Defendant's proffered reason for the adverse actions is pretextual.   The minor inconsistencies in Ali's account do not show that Defendant's reason has no basis in fact, is not the true reason, or is insufficient to explain the adverse actions.  *Torgerson*, 643 F.3d at 1047.   Tealeh's contention that Plant Manager Roy Reynolds "warned that Ali's accusation lacked substance" mischaracterizes the record.   Reynolds was not involved in the disciplinary decision and merely requested additional information in his role as a member of the facility's Threat Assessment Team.

Based on a thorough review of the record evidence and the applicable legal standards, the Court concludes that Tealeh has not established a prima facie case of discrimination with respect to his emergency placement and suspension claims.   Even assuming Tealeh has shown that he suffered adverse employment actions, he has not demonstrated that the circumstances surrounding these actions give rise to an inference of discrimination.  Tealeh has not presented evidence of similarly situated employees outside his protected class who were treated more favorably under comparable circumstances, and the fact that key decision-makers were themselves Black African immigrants undercuts any inference of discriminatory intent.

Moreover, Tealeh has not shown that Defendant's proffered reason for the adverse actions—his threatening behavior toward his supervisor—is pretextual. The inconsistencies in Mohamed Ali's account are relatively minor and do not cast doubt on the fundamental reason for Tealeh's discipline. Accordingly, the Court finds that Defendant is entitled to summary judgment on Tealeh's emergency placement and suspension claims.

## IV.   Retaliation Claim

Tealeh alleges that he was subjected to various adverse actions in retaliation for engaging in protected activity, such as filing EEO complaints and grievances. Defendant argues that Tealeh's retaliation claim is entirely time-barred and that, even if it were timely, Tealeh has not established a prima facie case of retaliation or shown that Defendant's proffered reasons for the adverse actions are pretextual.

"To establish a prima facie case of retaliation, an employee has the initial burden of establishing retaliation by showing that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)). "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman*, 728 F.3d at 804 (citing *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 955 (8th

Cir. 2011)). "However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Id.*

The Court must first address the timeliness of Tealeh's retaliation claim. As a federal employee, Tealeh was required to initiate contact with an EEO counselor within 45 days of the alleged retaliatory act. 29 C.F.R. § 1614.105(a)(1). Tealeh first contacted an EEO counselor on November 9, 2020, making the actionable time period September 25, 2020, to December 20, 2020.

In his Amended Complaint and opposition brief, Tealeh identifies several alleged retaliatory acts, including denials of promotion, exclusion from training opportunities, and unwarranted discipline. However, a close examination of the record reveals that all of these acts occurred before September 25, 2020, and thus fall outside the actionable time period.

For example, Tealeh claims that he was denied a promotion to a Data Collection position in January 2020 and that he was not selected for 204B training in February 2020, both in retaliation for his prior EEO activity. However, these alleged retaliatory acts occurred more than 45 days before Tealeh initiated contact with an EEO counselor and are therefore time-barred. *See* 29 C.F.R. § 1614.105(a)(1).

Tealeh also appears to argue that his October 2020 emergency placement and suspension were retaliatory. However, Tealeh did not include these allegations in his EEO complaint or Amended Complaint. As such, any retaliation claim based on these actions is not properly before the Court. *See Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir.

2005) (holding that a plaintiff's discrimination claims in a lawsuit are limited to the scope of their EEO charge and investigation, and dismissing claims not included in the EEO complaint).

Even assuming, arguendo, that Tealeh's retaliation claim were timely and properly exhausted, the Court finds that Tealeh has not established a prima facie case of retaliation. While Tealeh engaged in protected activity by filing EEO complaints in July 2019 and November 2020, he has not presented sufficient evidence of a causal connection between these complaints and any adverse employment action.

The Eighth Circuit has repeatedly held that "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc); *see Feltmann v. Sieben*, 108 F.3d 970, 977 (8th Cir. 1997); *see Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir. 1996). Here, Tealeh relies primarily on the temporal proximity between his EEO activity and the alleged retaliatory acts to support his claim. However, he has not presented any additional evidence suggesting that his protected activity was the reason for the adverse actions. The decision-makers involved in the challenged actions have consistently cited legitimate, non-retaliatory reasons for their decisions, such as the selection process for the 204B training, Tealeh's misconduct, and the allocation of overtime under the CBA.

Moreover, the record evidence undercuts Tealeh's retaliation claim. For instance, Tealeh alleges that Supervisor Greg Tate retaliated against him by not registering him for the February 2020 204B training. However, the record shows that Tate did, in fact, register

Tealeh for the training on the same day Tealeh requested registration.  At the time of registration, the class was already full, and Tealeh was placed on a waitlist for a subsequent session that was ultimately canceled due to the COVID-19 pandemic.

Similarly, Tealeh's claim that he was disciplined in October 2020 in retaliation for his EEO activity is not supported by the record.  Defendant has consistently maintained that Tealeh was placed on emergency placement and suspended due to his threatening behavior toward his supervisor, not because of his EEO complaints.  Tealeh has not presented any evidence to the contrary.

Tealeh's attempt to analogize his case to *Gilooly v. Missouri Department of Health & Senior Services*, 421 F.3d 734 (8th Cir. 2005), is unpersuasive.  In *Gilooly*, the plaintiff was terminated for allegedly making false statements during an investigation and grievance hearing that followed his accusations of sexual harassment against former co-workers.  421 F.3d at 740.  The court found that this termination could potentially support a retaliation claim, as the reasons for firing must be sufficiently independent from the employee's protected activity.  *Id.*  Here, in contrast, there is no evidence that Tealeh was disciplined for his EEO activity or for statements made during an investigation following EEO activity.  Rather, the record shows that Tealeh was disciplined for threatening his supervisor, a legitimate and non-retaliatory reason unrelated to any protected conduct.

Even if Tealeh could establish a prima facie case of retaliation, Defendant has articulated legitimate, non-retaliatory reasons for the challenged actions, and Tealeh has not demonstrated that these reasons are pretextual.  *See Torgerson*, 643 F.3d at 1047 (stating that a plaintiff may show pretext by demonstrating that the defendant's proffered

reason is unworthy of credence).  Tealeh's arguments regarding pretext are largely based on unsupported allegations and mischaracterizations of the record.  He has not presented evidence showing that Defendant's proffered reasons are unworthy of credence.

After a thorough review of the record and the parties' arguments, the Court concludes that Tealeh's retaliation claim is time-barred, as all of the alleged retaliatory acts identified in his Amended Complaint and opposition brief occurred outside the actionable 45-day time period.  *See* 29 C.F.R. § 1614.105(a)(1).  Moreover, to the extent Tealeh seeks to base his retaliation claim on his October 2020 emergency placement and suspension, those allegations are not properly before the Court because Tealeh did not include them in his EEO complaint.  *See Parisi*, 400 F.3d at 585.

Even if the Court were to consider the merits of Tealeh's retaliation claim, the record evidence does not support a prima facie case of retaliation.  Tealeh has not presented sufficient evidence of a causal connection between his EEO activity and any adverse employment action, relying instead on mere temporal proximity.  *See Kiel*, 169 F.3d at 1136 ("more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.").  Furthermore, Defendant has articulated legitimate, non-retaliatory reasons for the challenged actions, and Tealeh has not demonstrated that these reasons are pretextual.  *See Torgerson*, 643 F.3d at 1047.

Accordingly, the Court finds that Defendant is entitled to summary judgment on Tealeh's retaliation claim.  The claim is time-barred, and even if it were timely, Tealeh has

not presented sufficient evidence to establish a prima facie case of retaliation or to show that Defendant's proffered reasons for the adverse actions are pretextual.

## V.   Hostile Work Environment Claim

Tealeh alleges that he was subjected to a hostile work environment based on his race and national origin. He contends that various incidents, including harassment by a coworker, management's failure to address his complaints, and unwarranted discipline, created a work environment permeated with discriminatory intimidation, ridicule, and insult. Defendant argues that the conduct and comments identified by Tealeh are insufficient to support a hostile work environment claim and that Tealeh improperly attempts to recast his disparate treatment and retaliation claims as a hostile work environment claim.

To succeed on a harassment or hostile work environment claim under Title VII, a plaintiff must establish: (1) they are a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and their protected-group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *See Jackman*, 728 F.3d at 805. The harassment must be so severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Sutherland v. Mo. Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009) (quotation omitted). The standard for demonstrating a hostile work environment is demanding, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of employment. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007) (quotation omitted).

The Court begins by noting that Tealeh's hostile work environment claim appears to conflate discrete acts of alleged discrimination and retaliation with the severe or pervasive conduct required to support a hostile work environment claim. The Supreme Court has made clear that these are distinct concepts, emphasizing that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In contrast, "[a] hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (citing 42 U.S.C. § 2000e-5(e)(1).).

As such, the Court will focus its analysis on the specific conduct and comments that Tealeh alleges created a hostile work environment, rather than the discrete acts of alleged discrimination and retaliation that form the basis of his other claims. The record evidence shows that Tealeh identified three main categories of conduct and comments that he believes support his hostile work environment claim: (1) race-based comments by supervisors and coworkers; (2) harassment by a coworker, Shawn Smegal; and (3) management's failure to adequately address his complaints.

Turning first to the race-based comments, Tealeh testified that Supervisor Greg Tate made two comments that he found offensive: (1) during a May 2019 incident, Tate allegedly said he was going to call the police because "this is what Black people understand" or "[t]hat's the only language you people understand"; and (2) in October 2020, Tate said

he was "tired of hearing about discrimination" and referenced his own race, stating that he himself was Black.  Tealeh also alleges that in November 2019, a Black coworker told him he should "take [his] Black ass back to Africa" if he did not like the way things were done.

While these comments are certainly inappropriate and racially charged, the Court finds that they do not rise to the level of severe or pervasive conduct necessary to support a hostile work environment claim.  The Eighth Circuit has consistently held that "a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'"  *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006) (quotation omitted).  Racial slurs alone do not necessarily render a work environment hostile as a matter of law.  *See Singletary*, 423 F.3d at 893.  For conduct to be actionable as a hostile work environment, it must be severe or pervasive enough to alter the conditions of employment and be viewed by a reasonable person as hostile.  *Id.*

Here, the comments identified by Tealeh, while offensive, were relatively isolated incidents that occurred sporadically over a period of more than a year.  This is similar to the situation in *Bainbridge v. Loffredo Gardens, Inc.*, where the Eighth Circuit held that a supervisor's use of racial slurs about customers, competitors, or other employees, occurring approximately once a month over a two-year period, was insufficient to create a hostile work environment for the plaintiff.  378 F.3d 756, 759-60 (8th Cir. 2004).  Likewise, in *Woodland v. Joseph T. Ryerson & Son, Inc.*, the court found that sporadic racially-motivated misconduct by the plaintiff's coworkers, including racial epithets and offensive

graffiti, was "neither severe nor pervasive enough to create a hostile work environment." 302 F.3d 839, 844 (8th Cir. 2002).

The Court reaches a similar conclusion with respect to Tealeh's allegations of harassment by his coworker, Shawn Smegal.  While Tealeh testified that Smegal blocked his path, disrupted his work, called him names, and made threatening gestures, he has not presented evidence showing that Smegal's conduct was based on Tealeh's race or national origin.  To support a hostile work environment claim, the harassment must be based on a protected characteristic.  *Singletary*, 423 F.3d at 893.

Moreover, the record shows that USPS management took steps to address Tealeh's complaints about Smegal, such as separating the two employees and instructing them not to work in the same area.  This undermines Tealeh's argument that management failed to take appropriate action in response to his complaints.  While Tealeh may have been dissatisfied with management's response, Title VII "does not require an employer to fire" a harasser; rather, what an employer must do is to take prompt remedial action reasonably calculated to end the harassment.  *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1125 (8th Cir. 2007) (quotation omitted).

Finally, to the extent Tealeh argues that management's failure to investigate his complaints or take appropriate disciplinary action contributed to a hostile work environment, the Court finds that the record does not support this claim.  The evidence shows that USPS management did respond to Tealeh's complaints, even if not always to his satisfaction.  As noted above, Title VII does not require an employer to take specific

disciplinary action against an alleged harasser; rather, the employer must take prompt remedial action reasonably calculated to end the harassment. *Id.*

After a thorough and independent review of the record evidence and the relevant legal standards, the Court concludes that Tealeh has not presented sufficient evidence to support a hostile work environment claim. The race-based comments and incidents of harassment identified by Tealeh, while offensive, are not sufficiently severe or pervasive to alter the terms and conditions of his employment, as required by Eighth Circuit precedent. *See Sutherland*, 580 F.3d at 751 (holding that to prove a hostile work environment claim, the harassment must be so severe or pervasive that it alters the employment conditions); *see Nitsche*, 446 F.3d at 846 (holding that to be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant, and that allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'); *see Bainbridge*, 378 F.3d at 759-60 (holding that sporadic racial slurs, no more than one per month, not directed at the plaintiff or his family, did not render the work environment objectively hostile or alter the terms and conditions of employment); *see Woodland*, 302 F.3d at 844 (holding that sporadic racially-motivated misconduct by coworkers, including racial epithets and graffiti, was 'neither severe nor pervasive enough to create a hostile work environment' where the employer took prompt and adequate remedial action in response to reported incidents).

Moreover, the record does not support Tealeh's claim that USPS management failed to take appropriate action in response to his complaints. The evidence shows that

management did take steps to address Tealeh's concerns, such as separating him from Smegal and instructing them not to work in the same area.  While Tealeh may have been dissatisfied with management's response, Title VII does not require an employer to take specific disciplinary action against an alleged harasser; rather, the employer must take prompt remedial action reasonably calculated to end the harassment.  *Engel*, 506 F.3d at 1125.

Accordingly, based on the evidence in the record and the applicable legal standards, the Court finds that Defendant is entitled to summary judgment on Tealeh's hostile work environment claim.  Even when viewed in the light most favorable to Tealeh, the evidence is insufficient to support a finding that he was subjected to severe or pervasive harassment that altered the terms and conditions of his employment.

## VI.   Conclusion

For the reasons set forth above, the Court concludes that Defendant is entitled to summary judgment on all of Tealeh's claims.

First, the Court finds that the majority of Tealeh's disparate treatment and retaliation claims are time-barred, as they are based on alleged discriminatory acts that occurred more than 45 days before Tealeh initiated contact with an EEO counselor.  *See* 29 C.F.R. § 1614.105(a)(1).

Second, with respect to Tealeh's timely disparate treatment claims, the Court concludes that Tealeh has not established a prima facie case of discrimination or shown that Defendant's proffered reasons for its actions are pretextual.  Tealeh has not presented evidence showing that he was treated less favorably than similarly situated employees

outside his protected class or that the circumstances surrounding the alleged adverse actions give rise to an inference of discrimination.  Moreover, Defendant has articulated legitimate, nondiscriminatory reasons for his actions, and Tealeh has not demonstrated that these reasons are unworthy of credence.

Third, even if Tealeh's retaliation claim were timely, the Court finds that Tealeh has not established a prima facie case of retaliation or shown that Defendant's proffered reasons for the alleged retaliatory acts are pretextual.  Tealeh has not presented evidence of a causal connection between his protected activity and any adverse employment action, relying instead on mere temporal proximity.  Furthermore, Defendant has articulated legitimate, non-retaliatory reasons for the challenged actions, and Tealeh has not demonstrated that these reasons are pretextual.

Finally, the Court concludes that Tealeh has not presented sufficient evidence to support a hostile work environment claim.  The race-based comments and incidents of harassment identified by Tealeh are not sufficiently severe or pervasive to alter the terms and conditions of his employment.  Moreover, the record shows that USPS management took prompt remedial action reasonably calculated to address Tealeh's complaints.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant General Louis DeJoy's motion for summary judgment, (Dkt. 87), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 29, 2024                              s/Joan N. Ericksen
                                                    Joan N. Ericksen
                                                    United States District Judge